UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.A.,<br><br>                          Plaintiff,<br><br>v.<br><br>UR M. JADDOU, in her official capacity as Director of United States Citizenship and Immigration Services; and RENA BITTER, in her official capacity as Assistant Secretary of State for Consular Affairs,<br><br>                          Defendants. | Case No.: 23-cv-01634-AJB-BGS<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>**(Doc. No. 22)** |

     Presently pending before the Court is Director of United States Citizenship and Immigration Services Ur Jaddou and Assistant Secretary of State for Consular Affairs Rena Bitter's (collectively, "Defendants") motion to dismiss Plaintiff N.A.'s Complaint. (Doc. No. 22.) The motion is fully briefed, (Doc. Nos. 26, 27), and the matter is suitable for determination on the papers in accordance with Local Civil Rule 7.1.d.1. Upon consideration of the motion, supplemental authority, (*see* Doc. No. 29), and the parties' arguments in support and opposition, Defendants' motion to dismiss is **DENIED**.

///

///

## I.     BACKGROUND[1]

Plaintiff is a national of Pakistan who arrived in the United States in February 2018 as a refugee. (Complaint ("Compl."), Doc. No. 1, ¶ 29.) Shortly thereafter, in October 2018, Plaintiff filed "follow-to-join" family reunification Form I-730 petitions with the United States Citizenship and Immigration Services ("USCIS"), an agency of the Department of Homeland Security ("DHS"), to be reunited with his wife and four daughters, from whom he had been separated (the "Petitions"). (*Id.* ¶¶ 2, 30.) Plaintiff's wife and daughters remain in Pakistan, where they have remained since Plaintiff fled the country to seek safety in 2013. (*Id.* ¶ 32.)

As a result of the unreasonable delay in adjudication, "Plaintiff's family members have experienced challenges due to the separation that has gone on for years" and Plaintiff "worries about them, being so far away from him in Pakistan, and he fears for their safety." (*Id.* ¶¶ 34, 42.) Plaintiff explains that he and his family are Shi'ite Muslims, who are a minority religious group in Pakistan that "continue to be targets of violent attacks by U.S.-designated terrorist organizations . . . ." (*Id.* ¶ 22–23.)

In April 2019, Plaintiff received a receipt of the filing of each of his family reunification applications from the USCIS International Adjudication Support Branch in Anaheim, California. (*Id.* ¶ 68.) In July 2022, the USCIS's Los Angeles Asylum Office notified Plaintiff that his Petitions had been transferred to the USCIS Asylum Vetting Center in Atlanta, Georgia. (*Id.* ¶¶ 70–71.) In September 2022, the Atlanta Vetting Center mailed Plaintiff a Request for Evidence for each of his Petitions, to which he responded with additional documentation in October 2022. (*Id.* ¶¶ 71–72.)

Plaintiff filed the instant lawsuit on September 6, 2023, to compel USCIS to adjudicate the I-730 Petitions, and on November 15, 2023, USCIS informed Plaintiff that it had approved his Petitions and would transmit them to the State Department's National

---

[1] The following allegations are taken from the Plaintiff's Complaint and are construed as true for the limited purpose of ruling on this motion. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

Visa Center ("NVC"). (Doc. No. 26 at 12–13.)[2] NVC will then forward the approved Petitions to the U.S. Embassy in Islamabad, Pakistan to schedule interviews of the beneficiaries. (*Id.* at 13.) As of the filing of the motion to dismiss, it does not appear NVC has yet sent the Petitions to Islamabad, and Defendants do not state when NVC will do so. (*Id.*; Declaration of Karen Platt, Doc. No. 22-3, ¶¶ 10–11.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Without subject matter jurisdiction, a federal court is without "power" to hear or adjudicate a claim. *See Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)); *Kokkonen*, 511 U.S. at 377. The plaintiff bears the burden of establishing the Court's jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006) (citation omitted).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Jurisdictional attacks under Rule 12(b)(1) can be either facial or factual. *White*, 227 F.3d at 1242. A facial attack on jurisdiction asserts that the allegations in a complaint are insufficient to invoke federal jurisdiction, whereas a factual attack disputes the truth of the allegations that would otherwise confer federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

---

[2] The Court cites to the blue CM/ECF-generated document and page numbers located at the top of the page.

The moving party can convert its "motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court . . . ." *Id.* (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.3 (9th Cir. 2003). In resolving a factual attack, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Id.* (citing *White*, 227 F.3d at 1242). "Once the moving party has converted the motion to dismiss into a factual motion . . . the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage*, 343 F.3d at 1039 n.2); *see also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist.").

### B.   Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences

in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

## III.  REQUEST FOR JUDICIAL NOTICE

While the scope of review on a motion to dismiss for failure to state a claim is limited to the complaint, a court may consider evidence on which the complaint necessarily relies if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted). Furthermore, Federal Rule of Evidence 201 permits judicial notice of a fact when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1041–42 (S.D. Cal. 2015).

Here, only Defendants request judicial notice, and this request is unopposed.

Defendants request judicial notice of (1) the USCIS Notices of Approval of the I-730 petitions in this case; (2) USCIS's Annual Statistical Report for Fiscal Year 2022, and Credible Fear Workload Report Summary for Fiscal Year 2019; (3) the transfer of Plaintiff's I-730s from USCIS's Los Angeles Asylum Office to the Asylum Vetting Center in Atlanta, Georgia; and (4) the existence of the COVID-19 pandemic and the publicly available USCIS policies restricting operational capacity and suspending routine services in response. (Doc. No. 22 at 9–10.)

Because the approved I-730 petitions in this case are central to Plaintiff's claims and no party questions the authenticity of the copy attached to Defendants' motion, Defendants' request for judicial notice of this exhibit is **GRANTED**.

///

Regarding the remaining exhibits, the Court does not rely on these documents in reaching its conclusion below. Accordingly, the Court **DENIES AS MOOT** Defendants' requests for judicial notice as to the remaining exhibits.

## IV. DISCUSSION

Defendants move to dismiss Plaintiff's claims for lack of subject matter jurisdiction and for failure to state a claim. (*See generally* Doc. No. 22.) The Court addresses each argument in turn.

### A. Subject Matter Jurisdiction

Plaintiff pleads the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1361 (the Mandamus Act). (Compl. ¶¶ 15–16.) Plaintiff's claims are for violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 555, the Due Process Clause of the Fifth Amendment, and under the Declaratory Judgment Act, 28 U.S.C. § 2201. (*Id.* ¶¶ 18, 86–91.) He also seeks a writ of mandamus pursuant to 28 U.S.C. § 1651. (*Id.* ¶ 16.) The Court therefore finds it has original jurisdiction over this action.

Rather, Defendants contend Plaintiff's claims are moot and not yet ripe, and thus the Court lacks subject matter jurisdiction over them. (Doc. No. 22 at 15, 20.) Defendants base their Rule 12(b)(1) arguments on the fact that USCIS has approved the Petitions, and thus no "actual and concrete dispute" exists between the parties. (*Id.* at 16.) Moreover, Defendants assert Plaintiff's claims are not ripe because the State Department received the approved Petitions from USCIS just one month before Defendants filed the instant motion. (*Id.* at 21.)

#### 1. Mootness

Federal courts are "without power to decide questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). The inability to review moot cases derives from Article III's requirement that a "case or controversy" exist between the parties. *Id.* A case is moot "if subsequent events [make] it absolutely clear that the allegedly

6

wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). A defendant's voluntary cessation of allegedly wrongful conduct is unlikely to moot a case. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Here, Defendant Jaddou is the Director of USCIS and therefore directly oversees USCIS's operations, including the processing and adjudication of the Petitions. (Compl. ¶ 12.) As noted above, USCIS has approved the Petitions. Moreover, it is undisputed that Plaintiff's Petitions have not reached final adjudication: Plaintiff's wife and four daughters have not been issued travel packets and boarding foils and have not been admitted by Customs and Border Protection, nor has USCIS denied the Petitions on consular return. Defendants assert "Plaintiff conflates the separate processes of USCIS and the State Department into one 'application[,]'" but that in reality, there are two separate determinations—"namely, USCIS's adjudication of the I-730 petition and the State Department's determination of travel eligibility." (Doc. No. 22 at 13–14.) Defendants agree that USCIS "has exclusive responsibility and authority to adjudicate I-730 petitions." (*Id.* at 10.) Defendants assert that because USCIS has approved the Petitions, it "has adjudicated the I-730 petitions." (*Id.* at 16.) However, the parties dispute whether USCIS' responsibility ends after approval of the Petitions.

The mootness determination depends solely on whether USCIS has completed everything it can do in adjudicating an I-730 petition. The I-730 petition has two distinct phases. First, USCIS must grant approval of the petition if the principal refugee establishes a qualifying relationship such as a spouse or unmarried minor child. 8 C.F.R. § 207.7(a), (d). Then, depending on where the principal refugee's family is located, USCIS will either make travel determinations about the family members or transition the petition to the State Department to make those same travel determinations. *Id.* § 207.7(f)(2); 9 FAM § 203.5-2(b)(3). In the countries where USCIS maintains a field office, there is no question that USCIS is responsible for the I-730 petition until it is denied, or until travel authorization is issued. 9 FAM § 203.5-2(b)(3). In countries where USCIS does not maintain a field office,

it charges the State Department with making the travel eligibility determinations, while reserving the right to review any discrepancies in the petition. 8 C.F.R. § 207.7(f)(2); 9 FAM § 203.5-2(a)(6).

Plaintiff maintains his claims are not moot because USCIS has not finally adjudicated his request for family reunification. (Doc. No. 26 at 13.) Plaintiff asserts the Refugee Act, 8 U.S.C. § 1157, imposes a non-discretionary duty to process Plaintiff's Petitions to completion, and that this Court has subject matter jurisdiction because Defendants have not discharged this non-discretionary duty.

It is undisputed that the remaining process here has been "delegated" to the State Department because USCIS does not maintain a field office in Pakistan. (*See* Compl. ¶ 58; *see also* Doc. No. 22 at 6.) Defendants therefore argue USCIS is no longer involved and therefore no relief can be granted against it. (*See* Doc. No. 22 at 16.) But Defendants' position is inconsistent with the governing manual. The section of the Foreign Affairs Manual ("FAM") that sets forth the policies and procedures for "Follow-To-Join Asylees and Refugees" applications—which includes I-730 petitions—plainly states that "[a]s a matter of law, authority to adjudicate and process refugee and affirmative asylum applications, including Form I-730 follow-to-join derivatives of asylees and refugees, *rests exclusively with DHS*." 9 FAM 203.5-2(a)(1) (citing INA §§ 207, 208, and 6 U.S.C. § 271) (emphasis added). So while Defendants note USCIS has delegated the authority to conduct this remaining processing to consular officers, 9 FAM 203.5-2(b)(3)(b), as Plaintiff sets forth in his Complaint, (*see* Compl. ¶ 57), "[c]onsular officers act as agents of USCIS" during this process, 9 FAM 203.5-2(a)(6). Indeed, the State Department lacks authority to approve or deny a refugee family reunification application. The FAM states that if the State Department identifies any reason why the application should not move forward, it must return the application to USCIS for reconsideration. 9 FAM §§ 203.6-7(c), 203.5-2(a)(6). As a result, Defendants' contention that relief cannot be had against Defendants fail. *See Doe v. Risch*, 398 F. Supp. 3d 647, 659 (N.D. Cal. 2019) (granting plaintiffs' summary judgment and issuing an order compelling adjudication of plaintiffs' I-730 petition, dealing

8

with the I-730 petition adjudication process as one process, rather than as two distinct agency actions); *Salihi v. Blinken*, No. 23-cv-718-MMA-AHG, 2023 WL 8007348, at *4 (S.D. Cal. Nov. 17, 2023) (holding claims against Jaddou were not moot "[i]n light of DHS's exclusive authority to adjudicate the [I-730] Petition and control over the State Department, and in the absence of any binding authority to the contrary"); *Mohamed v. Jaddou*, No. 23-902 (JRT/LIB), 2024 WL 477098, at *3 (D. Minn. Feb. 7, 2024) (finding that "DHS, through its subsidiary USCIS, maintains control over the entire adjudication of I-730 petitions").

Defendants further assert the language found in the FAM describing the State Department as "an agent" of USCIS should not have a "legal consequence" attached to it. (Doc. No. 22 at 18.) Specifically, Defendants assert the "description of the FAM as 'a comprehensive, useful tool for consular officers,' 9 FAM 101.2-1(a), 'suggests that the FAM is a form of informal guidance for Department employees, not the kind of binding action that marks the consummation of the agency's decisionmaking or generates legal consequences in particular cases.'" (*Id.* at 18–19 (quoting *Avagyan v. Blinken*, No. 22-cv-2643 (CRC), No. 22-cv-2440 (CRC), 2022 WL 19762411, at *5 (D. D.C. Sept. 29, 2022)).) However, Defendants fail to cite any statutes or regulation giving the State Department a role in the family reunification process beyond acting as an agent of USCIS in the context of I-730 petitions.

Moreover, Defendants' attempt to distinguish this case from *Salihi* is unpersuasive. In *Salihi*, the plaintiff's story mirrors that of Plaintiff here, where the plaintiff filed an I-730 petition that was originally approved by USCIS and sent to the State Department for travel eligibility determinations only after the complaint was filed. *Salihi*, 2023 WL 8007348, at *1–4. USCIS moved to dismiss for lack of subject matter jurisdiction, asserting the action was moot as it had adjudicated the I-730 petition. *Id.* at *3. The court denied USCIS's motion to dismiss, citing the FAM for the proposition that DHS alone has the authority to adjudicate I-730 petitions. *Id.* at *4. The Court agrees, and finds USCIS maintains control over the entire adjudication of I-730 petitions. *See* FAM 203.5-2(a)(1);

9

8 U.S.C. §§ 1103(a), 1157(c)(1), 1158; 6 U.S.C. § 271(b)(3). "It is difficult to reconcile that in locations where USCIS maintains a field office, no transfer of responsibility occurs but where USCIS does not have a field office, its responsibility fully transfers to DOS with the petition." *Mohamed*, 2024 WL 477098, at *3.

Thus, based on the foregoing, the Court finds Plaintiff's claims are not moot.

### 2. Ripeness

Article III of the Constitution limits federal court jurisdiction to adjudicate actual cases and controversies, and not to render advisory opinions. *See Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (citing *Pub. Serv. Comm'n v. Wycoff, Co.*, 344 U.S. 237, 244 (1952)). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990). "The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction . . . .'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57, n. 18 (1993)).

"Ripeness has both constitutional and prudential components." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010). The constitutional component "overlaps with the 'injury in fact' analysis for Article III standing." *Id.* "Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Id.* (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

Defendant Bitter is the Assistant Secretary of Consular Affairs, a component agency of the State Department. Defendants assert Plaintiff's claims against Defendant Bitter are not ripe because the I-730 adjudication rests exclusively with USCIS and was pending when the Complaint was filed, and as such, any claims against Defendant Bitter "could only be speculative." (Doc. No. 22 at 21.) Defendants further argue the approval of an I-730 petition is a condition precedent for the State Department to be involved in the case,

and the State Department received the Petitions from USCIS just one month before Defendants filed the motion to dismiss. (*Id.* at 20–21.)

Defendants rely upon *Abbas v. United States Department of Homeland Security*, No. 1:20-cv-03192 (CJN), 2021 WL 3856625 (D. D.C. Aug. 29, 2021), and *Ordonez-Garay v. Chertoff*, No. CV F 06-1835 AWI SMS, 2007 WL 2904226 (E.D. Cal. Oct. 3, 2007), which dismissed the respective cases before them upon finding the petitions in those cases had been approved and forwarded to the NVC. However, as noted by Plaintiff, both *Abbas* and *Ordonez-Garay* involved I-130 visa petitions, rather than the I-730 petition at issue here. Indeed, as noted in *Abbas*, "[t]he processes for adjudicating I-130 petitions and for processing visa applications are distinct agency actions with different eligibility criteria managed by separate government entities." *Abbas*, 2021 WL 3856625, at *2. However, as discussed above, the I-730 petitions differ from I-130 petitions in that USCIS maintains control over the entire adjudication of I-730 petitions.

Plaintiff responds that because there is no separate application in the State Department, which lacks independent statutory authority in the follow-to-join process, "USCIS's outsourcing of certain tasks to the State Department does not permit Defendants to restart the clock . . . ." (Doc. No. 26 at 18.) The Court agrees. Defendants have failed to point the Court to any statute or case law to support their assertion, and the Court finds none, that USCIS's delegation of certain tasks in the processing of the I-730 petition restarts the clock for a plaintiff's claim for unreasonable delay. Rather, courts have analyzed delays in the follow-to-join process as a whole. *See, e.g.*, *Risch*, 398 F. Supp. 3d at 656 (entering judgment against both the State Department and USCIS, stating the plaintiffs' I-730 petition had been pending for two and a half years, counting the entire period of delay as a whole); *Salihi*, 2023 WL 8007348, at *7 (finding plaintiff plausibly stated claims against all defendants and attributing unreasonable delay to both USCIS and State Department, although "Plaintiff's asserted delay relates, at this time, to the pre-conditional approval phase and therefore is more plausibly attributable to USCIS"). The

Court **DENIES** Defendants' motion to dismiss on this ground and finds the Court has subject matter jurisdiction over this case.

### B. Failure to State a Claim

#### 1. APA and Mandamus Act Claims

Defendants next move to dismiss Plaintiff's claims against Defendant Bitter, asserting Plaintiff fails to plead any legal duty the State Department has violated under the APA because "Plaintiff cannot demonstrate that the State Department or the U.S. Embassy has a plainly defined and non-discretionary duty to do a ministerial act."[3] (Doc. No. 22 at 17.) Specifically, Defendants argue the APA "imposes no clear duty for the U.S. Embassy in Islamabad to schedule Plaintiff's family members before others[,]" that the Secretary of State has broad discretion on how the State Department allocates consular services, and that there is no specific, unequivocal command to schedule a consular interview within a certain time. (*Id.*) Plaintiff responds that, unlike other immigration processes, there is a non-discretionary obligation to determine follow-to-join refugee status, and that this process cannot become discretionary because USCIS delegates a portion of it to the State Department. (Doc. No. 26 at 17.)

Under the APA, a court shall "compel agency action unlawfully withheld or unreasonably delayed . . . ." 5 U.S.C. § 706(1). Similarly, under the Mandamus Act, the court has power "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under [the Mandamus Act], 'in essence,' as one for relief under § 706 of the APA." *Indep. Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). Where a plaintiff seeks identical relief under

---

[3] Defendants raise this argument in support of their claim that the Court lacks subject matter jurisdiction over Plaintiff's APA claim. (*See* Doc. No. 22 at 17.) However, "the requirements for obtaining relief under the APA go to the merits, not to subject matter jurisdiction." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022).

the APA and the Mandamus Act, courts routinely elect to analyze both claims under the APA only. *See, e.g.*, *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022); *Castaneda v. Garland*, 562 F. Supp. 3d 545, 561 (CD. Cal. 2021).

To state a claim for unreasonable delay under the APA, "a petitioner must show that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty." *Liu v. Denayer*, No. CV 21-6653-DMG (MRWx), 2022 WL 17370527, at *2 (C.D. Cal. July 18, 2022) (quoting *Khan v. Johnson*, 65 F. Supp. 3d 918, 925 (C.D. Cal. 2014)).

Plaintiff pleads "[t]he follow-to-join statute creates a non-discretionary entitlement to admission for spouses and unmarried children of refugees who have met the eligibility requirements and who are not subject to any applicable inadmissibility grounds." (Compl. ¶ 51 (citing 8 U.S.C. § 1157(c)(2)(A)).) Title 8 of the United States Code, section 1157 provides, in relevant part,

> A spouse or child . . . of any refugee who qualifies for admission under paragraph (1) shall, . . . be entitled to the same admission status as such refugee if accompanying, or following to join, such refugee and if the spouse or child is admissible . . . .

8 U.S.C. § 1157(c)(2)(A). "However, qualified individuals having a nondiscretionary entitlement to benefits is not the same as an agency having a nondiscretionary duty to act." *Salihi*, 2023 WL 8007348, at *6. In *Vaz v. Neal*, 33 F.4th 1131 (9th Cir. 2022), the Ninth Circuit explained:

> "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." Thus, a court may compel agency action under the APA when the agency (1) has "a clear, certain, and mandatory duty," and (2) has unreasonably delayed in performing such duty, *see* 5 U.S.C. § 706(1).

*Vaz*, 33 F.4th at 1135–36 (citations omitted). To this point, Plaintiff relies in part on 8 C.F.R. § 207.7, asserting "Defendants have a nondiscretionary duty to adjudicate Plaintiff's family reunification applications" under the statute. (Compl. ¶ 76.) This regulation

13

provides, in relevant part, that where follow-to-join family members are outside the United States, "USCIS will notify the refugee[s] of such approval" and "will send the approved request to the Department of State for transmission to the [appropriate] U.S. Embassy or Consulate . . . ." 8 C.F.R. § 207.7(f)(2). Alternatively, if the follow-to-join family members "[are] found to be ineligible for derivative status, a written notice explaining the basis for denial shall be forwarded to the principal refugee." *Id.* § 207.7(g). The FAM, as noted above, sets forth numerous duties, dispersed among DHS, USCIS, and the State Department, with respect to the processing and ultimate approval or denial of an I-730 petition.

Although Defendants argue they have no duty to schedule a consular interview within a particular time, (*see* Doc. No. 22 at 16–20), Defendants have a statutory duty to perform the discrete actions they are assigned within a reasonable time. *See* 5. U.S.C. § 555(b). As stated in *Salihi*,

> Regulation 207.7 does not appear to assign any nondiscretionary duty to act to the State Department, but the governing manual does identify various nondiscretionary actions. To name just a few, "consular officers are responsible for interviewing the beneficiaries of Form I-730s to verify the identity and the relationship to the petitioner, as well as determining if any inadmissibilities or bars to derivative asylum or refugee status exist." 9 FAM § 203.6-2(d). "If case is complete and there are no unresolved issues, process to the case to conclusion," *id.* § 203.6-5(d); "complete a copy of the V93 Notice of Conditional Approval to Travel Letter, *id.* § 203.6-5(f); and "boarding foil [ ], placed in a passport or other travel document [ ], and a travel packet [ ] must be prepared for each beneficiary found eligible to travel to the United States by a consular officer," *id.* § 203.6-8(b)(1)(a). Alternatively, for a beneficiary not approved to travel to the United States, the consular officer "must inform the beneficiary in writing (with a cc to the petitioner) that they were not approved to travel to the United States and that their case is being returned to USCIS for further action." *Id.* § 203-6-9(b)(1).

*Salihi*, 2023 WL 8007348, at *6. Defendants do not dispute the State Department has not yet performed any of these actions.

///

14

     Having concluded that Plaintiff has duly pled a failure by Defendants to take nondiscretionary action, the Court turns to whether Plaintiff has plausibly pled the delay is unreasonable. To evaluate whether an agency's delay is unreasonable under the APA, the Court turns to the six-factor balancing test set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*"). *See Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason[;]
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[;]
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake[;]
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;]
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay[;] and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 507 n.7 (quoting *TRAC*).

     "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Gonzalez v. U.S. Dep't of Homeland Sec.*, 500 F. Supp. 3d 1115, 1129–30 (E.D. Cal. 2020) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D. D.C. 2003)); *see also Yu v. Brown*, 36 F. Supp. 2d 922, 935 (D. N.M. 1999) ("What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case.").

///

Plaintiff asserts the *TRAC* analysis is a fact-intensive inquiry that is not appropriately decided at the motion to dismiss stage. (Doc. No. 26 at 20.) The Court agrees. *See Salihi*, 2023 WL 8007348, at 7 ("The ultimate determination of whether the *TRAC* factors are satisfied is not capable of resolution on the pleadings and without further evidence and briefing."); *Akbar v. Blinken*, No.: 23cv1054-LL-BLM, 2023 WL 8722119, at *4 (S.D. Cal. Dec. 18, 2023) ("[T]his Court agrees with Plaintiffs that the *TRAC* test is more appropriately applied after further briefing and discovery."); *Tailawal v. Alejandro Mayorkas, Sec'y of Homeland Sec.*, No. LA CV 22-01515-SPG-RAO, 2022 WL 4493725, at *4 (C.D. Cal. Aug. 18, 2022) ("[B]ecause the *TRAC* factor analysis is necessarily fact-intensive, it is more appropriately applied after some discovery than at the pleading stage."); *Hui Dong v. Cuccinelli*, No.: CV 20-10030-CBM-(PLAx), 2021 WL 1214512, at *4 (C.D. Cal. Mar. 2, 2021) ("The *TRAC* test is fact-intensive, and courts have declined to resolve whether the *TRAC* test has been satisfied at the pleading stage, including with respect to immigration applications.").

Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's APA and Mandamus Act claims.

### 2. Fifth Amendment Claim

Lastly, Defendants move to dismiss Plaintiff's Fifth Amendment claim, asserting "Plaintiff states no facts that would suggest a constitutional violation." (Doc. No. 22 at 26.) In response, Plaintiff asserts he has a legitimate statutory claim of entitlement to reunification with his family in the United States, and that he has stated a claim that by failing to timely decide his Petitions, Defendants violated his procedural due process rights pursuant to the Fifth Amendment. (Doc. No. 26 at 25.)

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). Plaintiff contends his interest

in the adjudication of the Petitions is such an interest because the approval of the Petitions is nondiscretionary. The Ninth Circuit has found that the "grant of an I-130 petition for immediate relative status is a nondiscretionary decision" and therefore "a right to which citizen applicants are entitled as long as the petitioner and . . . beneficiary meet the statutory and regulatory requirements for eligibility"—in other words, a "protected interest [that] is entitled to the protections of due process." *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013). The Court finds that because the grant of an I-730 petition is similarly a nondiscretionary decision, it is a "protected interest [that] is entitled to the protections of due process." *Id.*

Because the Court has found that Plaintiff's Petitions have not yet been adjudicated, the Court **DENIES** Defendants' motion to dismiss Plaintiff's Fifth Amendment claim.

## V.   CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 30, 2024

Hon. Anthony J. Battaglia
United States District Judge